UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
5:08cr16

| UNITED STATES OF AMERICA | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | **ORDER ON RESTITUTION** |
| GREGORY DONALD BRUNNER, | ) | |
| Defendant. | ) | |
| | ) | |

**THIS MATTER** is before the court on the Government's Sealed Memorandum in Support of Order of Restitution (Document #34), filed November 3, 2009, Defendant's Response in Opposition (Document #36), filed November 5, 2009, and the Government's Reply (Document #37), filed November 13, 2009.

On October 30, 2008, Defendant pled guilty to two related counts of possessing child pornography, such possession being in violation of 18 U.S.C. § 2252(a)(1) and (b)(1) as to the first count and § 2256(2) as to the second count. Defendant was sentenced on October 14, 2009. At the sentencing hearing, counsel for the Government asked the court for additional time to file arguments and supporting documents in favor of restitution. The court granted the Government's request and agreed to hold open the issue of restitution for ninety (90) days, and this was reflected in the Judgment (Document #25) entered on October 22, 2009. Both parties have since seized the opportunity to brief the court. Neither party has requested a further hearing.

Relevant to the present motion for restitution, among the over 1,000 images of child pornography in Defendant's possession were included at least one image from the "Vicky" series of

1

child pornography and at least one image from the "Misty" series.[1]  Now adults, these individuals have submitted loss figures for courts to consider when determining the amount of restitution owed to them as victims of child sexual abuse.

## DISCUSSION

18 U.S.C. § 2259, the Mandatory Restitution for Sexual Exploitation of Children Act, ("§ 2259") requires exactly what its title suggests: that defendants convicted of the sexual abuse and exploitation of children must pay restitution to their victims.  The mandatory nature of an award of restitution in these cases is explicit and unwaivable.  § 2259(a) states that "the court *shall* order restitution for any offense under this chapter." (emphasis added); see also 18 U.S.C. § 2259(b)(4)(A) (stating that "issuance of a restitution order under this section is mandatory").  In addition, such order of restitution must compensate the child victim of sexual exploitation or abuse "in the full amount of the victim's losses."  18 U.S.C. § 2259(b).  The procedure for issuing and enforcing an award of restitution under § 2259 is governed by 18 U.S.C. § 3664, which also applies to the issuance of restitution awards pursuant to the Mandatory Victims Restitution Act ("MVRA"), 18 U.S.C. § 3663.

In order to be entitled to an award of restitution under § 2259, Vicky and Misty must be "victims" of Defendant's crimes within the meaning of the statute.  There can be no doubt that this is the case.  "The possession, receipt, and shipping of child pornography directly victimizes the children portrayed by violating their right to privacy, and in particular violating their individual interest in avoiding the disclosure of personal matters."  United States v. Sherman, 268 F.3d 539, 544 (7th Cir. 2001).  In addition to violating the victim's right to privacy, possession of child

---

[1] The names "Vicky" and "Misty" are pseudonyms for known victims of child sexual abuse.  Images of their abuse have been distributed widely as child pornography.

pornography also harms the child depicted by "contributing to a[n ongoing] cycle of abuse, and perpetuating a market for the sharing of the material." United States v. Hicks, 2009 WL 4110260, at *2 (E.D. Va. Nov. 24, 2009). Both Congress and the Supreme Court have catalogued the unique harms that the continued existence, possession, and distribution of child pornography inflicts on the individuals depicted. In the case of New York v. Ferber, 458 U.S. 747, 759 (1982) the Supreme Court specifically recognized that the harm to sexually abused children "is exacerbated" by the circulation of materials depicting the abuse. As support for this assertion, the Court quoted various experts who explained:

> Pornography poses an even greater threat to the child victim than does sexual abuse or prostitution. Because the child's actions are reduced to a recording, the pornography may haunt him in future years, long after the original misdeed took place. A child who has posed for a camera must go through life knowing that the recording is circulating within the mass distribution system for child pornography . . . . It is the fear of exposure and the tension of keeping the act secret that seem to have the most profound emotional repercussions . . . . The victim's knowledge of publication of the visual material increases the emotional and psychic harm suffered by the child.

Id. at 759 n.10 (citations and alterations omitted). These quotations were later excerpted by Congress to support passage of the Child Pornography Prevention Act of 1996,[2] see S. Rep. 104-358 (1996), and the Ferber decision is also cited in the legislative history of § 2259, see United States v. Danser, 270 F.3d 451, 455 (7th Cir. 2001). Thus, by both legislative intent and judicial construction, the law is clear that the children depicted in child pornography are victims not only of the makers of the pornography but also of its possessors.

The next issue that must be considered is whether § 2259 contains a causation requirement.

---

[2]This law is not directly implicated in the present case and was in fact overturned as unconstitutionally overbroad by the Supreme Court in Ashcroft v. Free Speech Coalition, 535 U.S. 234 (2002).

The statute itself lacks an explicit causation requirement. Nevertheless, most courts to consider the question have implied a causation requirement from the statutory definition of "victim" (i.e., "the individual harmed <u>as a result of</u> a commission of a crime under this chapter") and from the language of the catchall damages provision ("other losses suffered by the victim <u>as a proximate result of</u> the offense"). § 2259 (emphases added); <u>see</u> <u>also</u> <u>Hicks</u>, *3 (so holding and citing cases).

In the present case, the court finds that Defendant's conduct was a proximate cause of both Vicky's and Misty's injury. In receiving and possessing the pornographic images of Vicky and Misty taken while they were children, Defendant participated in an ongoing cycle of abuse and thereby contributed to the victims' mental and emotional trauma. That as a general proposition the continued existence and possession of images such as these harm the person depicted is abundantly established by the cases (and the expert testimony incorporated therein) cited in the court's discussion of Misty's and Vicky's status as victims, <u>supra</u>. That the criminal behavior of Defendant in this case caused specific harm to Misty and Vicky is also well-documented by the victim impact statements and psychological reports submitted with the Government's motion for restitution. For instance, Dr. Silberg's Report of her psychological consultation with Misty states unequivocally that due to the continued possession of images of Misty's abuse by individuals such as Defendant,

> [Misty's] post traumatic stress symptoms and [other] effects of sexual abuse are more resistant to treatment than those that would normally follow a time limited trauma, as her awareness of the continued existence of the pictures and their criminal use in a widespread way leads to an activation in these symptoms.

(Govt.'s Exh. 2 at 8). The psychologist who examined Vicky similarly found that Vicky's "knowledge of the proliferation of her abuse through the internet has exponentially added to the types of triggers that can reactivate trauma-related thoughts or feelings . . . and can bring her trauma

4

immediately into the present." (Govt.'s Exh. 7 at 4-5). These snippets are just examples of the thorough analysis in the psychological evaluations that connects conduct such as Defendant's to the victims' injuries.

Having established that Vicky and Misty are victims within the meaning of § 2259, and having established that Defendant's conduct proximately caused Vicky and Misty injury, the court must now determine the amount of restitution owed to each victim. Although courts do require "a causal connection between the offense of conviction and the victim's harm" before awarding restitution, no circuit to address the issue has "imposed a requirement of causation approaching mathematical precision" when determining the amount of restitution that is appropriate. United States v. Doe, 488 F.3d 1154, 1159-60 (9th Cir. 2007) (quotation omitted). Instead, all that is required is that "a rule of reasonableness be applied." Id. at 1160. This slightly relaxed standard[3] is appropriate given "the strong Congressional intent behind section 2259." Danser, 270 F.3d at 455 n.5. The burden of establishing a victim's loss rests with the Government and requires a preponderance of the evidence. Squirrel, 588 F.3d at 213 (citations omitted). Where more than one defendant has contributed to the loss of a victim, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss and economic circumstances of each defendant." 18 U.S.C. § 3664(h).

---

[3]This is in contrast to the somewhat stricter standard of causation under the Mandatory Victim's Restitution Act ("MVRA"), 18 U.S.C. § 3663A, which requires a showing that any loss was "directly and proximately caused by the defendant's offense conduct." United States v. Squirrel, 588 F.3d 207, 215 (4th Cir. 2009). However, the MVRA differs from § 2259 in that the MVRA's causation standard is clearly articulated in that statute's definition of a "victim." § 3663A(a)(2) (defining a victim as "a person <u>directly and proximately</u> harmed as a result of the commission of an offense" (emphasis added)).

In the present case, the Government has established by a preponderance of the evidence that Vicky and Misty have suffered losses for treatment and counseling related to their abuse and exploitation. Vicky has submitted a loss amount of $146,629.19 as the cost of past and future treatment. After reviewing the supporting documentation, including the psychological consultation and victim impact statements, the court concludes that this amount has been established by a preponderance of the evidence. A host of other courts have examined these same documents and reached the same conclusion in other cases involving the possession of Vicky's images. Hicks, *6, *6 n.8-9 (citing cases).

Misty has submitted a significantly higher loss amount to the court, which asserts $512,681.00 as the cost of her lifetime of treatment. The discrepancy when compared to Vicky's future treatment costs is largely due to the fact that Misty's economic loss analysis assumes that she will continue to require therapy once a week for the remainder of her life, whereas Vicky's loss analysis presumes that as time passes, she will require less and less frequent therapy sessions. After a careful review of all of the materials submitted to assist the court in establishing restitution amounts, the court finds that these differences in future treatment frequency are attributable to real differences between the victims' specific characteristics and experiences.[4] In Misty's case, her

---

[4] For instance, Misty was required to perform sex acts "on demand" for a pedophile. Also, Vicky's psychological report states that her specific personal characteristics make her unusually well-off for a survivor of child sexual abuse. Vicky will require less treatment over the course of her life than the ordinary victim of child sexual abuse "because she eschews the view of being a victim, is very much committed to being a survivor and . . . will in time become an increasingly resilient and integrated 'thriver,' transcendent from the . . . traumas to which she has been and will be exposed." (Govt.'s Exh. 7 at 9). Vicky's psychological consultant felt that these unusual factors indicated that Vicky would not need inpatient treatment of the type usually required by childhood victims of sexual abuse. (Id.) Misty, on the other hand, is expected to require residential therapy at a trauma recovery facility, which alone adds $120,000 to the expected cost of her treatment. (Govt.'s Exh. 2 at 10; Govt.'s Exh. 3 at 4).

6

continuing need for weekly counseling sessions is expressly attested to by her psychological consultant. (Govt.'s Exh. 2 at 10). Thus, the court finds that Misty's stated amount for losses attributable to therapy costs has been established by a preponderance of the evidence.

Misty has also submitted a request for restitution in compensation for lost future earnings in the amount of $2,855,173.00. § 2259(b)(3)(D) states that restitution awards shall include restitution for "lost income." Most courts to consider the issue have held that "lost income" -- at least when interpreting a similar "lost income" provision in the MVRA -- includes all lost income, including lost future earnings. United States v. Serawop, 505 F.3d 1112, 1124-25 (10th Cir. 2007); United States v. Cienfuegos, 462 F.3d 1160, 1163-69 (9th Cir. 2006); United States v. Oslund, 453 F.3d 1048, 1062-63 (8th Cir. 2006); but see United States v. Fountain, 768 F.2d 790, 801-02 (7th Cir. 1985) (expressing disapproval of an award of future earnings as restitution under a different statute) (cited approvingly in Danser, 270 F.3d at 455 n.5). In light of the generous phrasing and broad remedial purpose of § 2259, this court finds that loss of future earnings is an appropriate component of restitution. The Government has submitted a detailed report to support Misty's claim for lost future earnings, and this report is not contested by Defendant. For this reason, the court finds that the Government has met its burden to establish Misty's lost future earnings by a preponderance of the evidence in the amount of $2,855,173.00. Oslund, 453 F.3d at 1063.

In a case such as this where more than one defendant has contributed to the loss of a victim, "the court may make each defendant liable for payment of the full amount of restitution or may apportion liability among the defendants to reflect the level of contribution to the victim's loss." 18 U.S.C. § 3664(h). Given the relatively minor nature of Defendant's contribution to the victims' losses in this case, and the difficulty in coordinating joint liability among the many different

defendants who have been and will be convicted of possessing images of Misty and Vicky, the court finds that apportioning a discrete amount of the victims' losses to Defendant is in the interests of justice. Because Defendant's crime was mere possession of pornographic images, because Defendant never had any contact with the victims, and because regrettably there are many individuals who possess similar images, the court will require Defendant to pay restitution in the amount of $1,500 to Vicky and $6,000 to Misty. The award to Misty includes $5,000 for the cost of future therapy and $1,000 for lost earnings. As the court finds that the harm caused by Defendant to each victim was equivalent, the court has allocated a roughly equal fraction of the victims' therapy costs as restitution.

Although the $1,500 award to Vicky is somewhat less than in other cases, and although the restitution for Misty's loss of earnings is a lesser fraction of the total than the restitution for her treatment costs, the court finds that these amounts appropriately quantify Defendant's level of contribution to the victims' losses. The amount of Vicky's restitution has been decreased by half from other similar cases, because the court believes that in these other cases the courts have failed to recognize that the most substantial cause of Vicky's loss was the initial abuse. In dividing restitution equally among all possessors of her images without first discounting half of the total restitution amount as attributable solely to Vicky's abuser, these courts have overvalued the amount of restitution owed by each defendant convicted of possessing her images.

For similar reasons, the court has awarded only a small fraction of Misty's lost wages as restitution in this case. In the economic loss report submitted to the court, Misty's loss of earnings is largely attributed to her inability to finish college. (Govt.'s Exh. 3 at 2.) And according to the other evidence before the court, Misty's decision to drop out was triggered by a movie she watched

with her psychology class that focused on the plight of abused children. (Govt.'s Exh. 2 at 6.) Because the court finds that Misty's initial abuse would likely have triggered the same response even without the continued possession of her image by individuals such as Defendant, the court has reduced the award significantly. Nevertheless, the court finds that the $1,000 award is appropriate because the psychological problems associated with Misty's knowledge of the continued distribution of her images undoubtedly impairs her ability to heal and to return to school. This knowledge also contributes to Misty's inability to focus and to maintain full-time employment. (See Govt.'s Exh. 2 at 3, 4, 6, 8). As a result, the court finds that Defendant's actions have proximately caused at least $1,000 in lost earnings to his victim.

**WHEREFORE**, for the foregoing reasons, Defendant Brunner is **ORDERED** to pay restitution to "Vicky" in the amount of $1,500 and to "Misty" in the amount of $6,000. The court has determined that Defendant does not have the ability to pay interest and orders that the interest requirement is waived. Payment of these amounts shall be due immediately. To facilitate payment, the court recommends that the Bureau of Prisons allow Defendant to participate in the Inmate Financial Responsibility Program.

In the event that the entire amount of criminal monetary penalties imposed is not paid prior to the commencement of supervised release, payment shall be due in equal monthly installments of $50.00, and such payments shall commence sixty (60) days after Defendant's release to a term of supervision. During Defendant's term of supervision, the U.S. Probation Officer shall pursue collection of the amount due and may request the court to establish or modify a payment schedule if appropriate.

Defendant shall notify the court of any material change in his economic circumstances

affecting his ability to pay restitution.

        **SO ORDERED**.

    Signed: January 12, 2010

Richard L. Voorhees
United States District Judge